Good morning, Your Honors. Kathleen March for the Appellant, the Bankruptcy Law Firm, P.C. I'll refer to the law firm as law firm for shortness. I wish to reserve approximately three minutes for rebuttal. The Bankruptcy Court here, affirmed by the Bankruptcy Appellate Panel, BAP, only granted $26,000 of the $198,506 of attorney's fees that law firm applied for by law firm's 503B application, which is application to have the bankruptcy estate, in this case the Waxburg Corporation case, bankruptcy case, pay the law firm's attorney's fees and costs due to the law firm's work giving a substantial benefit to the corporate bankruptcy estate. There were $172,506 of the attorney's fees were cut. Everybody here agrees that the standard of review is abuse of discretion, but abuse of discretion as a matter of law occurs if there are errors of law. There are eight errors of law here that were made by the Bankruptcy Court and by the BAP. We're going to try and get through eight of them in 12 minutes. Error one of law, which is the biggest error of law, was the complete failure of the Bankruptcy Court and the BAP to base the award of attorney's fees on the $2.6 million benefit that the law firm's work conferred on the Waxburg Corporation bankruptcy estate. That was contrary to the U.S. Supreme Court case, Hensley v. Eckert, that the degree of success obtained is the most critical factor in determining the attorney's The U.S. Supreme Court says the result is what matters and that where a plaintiff, here the bankruptcy law firm, obtained excellent results, the attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation and indeed in some cases an exceptional success and enhanced award may be justified. Counsel, let's say we agree that your firm is entitled to attorney's fees under this section 503, which specifically allows for actual and necessary costs for preserving the estate. Is that correct? That's the language of 503B, yes. All right, so do you dispute that the Bankruptcy Court may still assess the reasonableness of the fees requested or strike those fees for work the court found to be excessive or unnecessary? No, the Bankruptcy Court was entitled to assess the reasonableness of the fee, but the most critical factor, according to the U.S. Supreme Court, and also the Ninth Circuit said this in Klein v. City of Laguna Beach, the most critical factor is the result obtained. Here the Bankruptcy Court ignored, didn't even mention in its decision the $2.6 million benefit and the BAP said, well, the law firm claimed there was this benefit, but it doesn't acknowledge it. In fact, the evidence was uncontroverted that the law firm's work preserved $2.6 million of corporate estate money from being misspent. The trustee, appellee trustee, moved for substantive consolidation of the corporate and individual cases so that he could take $2.6 million of corporate case money and use that corporate case money to pay $1 million of attorneys' fees for himself, well, trustees' fees and attorneys' fees for himself and his attorneys for work done in the individual case, which was only owed by the individual case, not owed by the corporate case, and pay a $1.6 million compromise exemption to individual Waxburg. An exemption can only be claimed in an individual case, so it was, if owed at all, only owed in the individual case. Corporations don't get exemptions. Law firm opposed that consolidation, appealed that consolidation, moved for state pending appeal because otherwise $1.6 million would have left the corporate estate 14 days after order, got a state and got that reversed, the substantive consolidation reversed by the BAP. That saved $2.6 million. The fee requested was only 7.8% of $2.6 million. The fee awarded, $26,000, was 1% of the $2.6 million preserved. Like that fellow before me, I think I could almost sit down here because there is no, other than this case, there is no reported case where the fee was so low. It was my understanding of what was decided by the BAP that their view of it was that the consolidation question had to do with the fee request, basically, and was not really for the benefit of the estate, and that it was, in a sense, a self-serving move rather than a preservation of the capital move. What is your, first of all, do you agree or disagree with my reading of what was happening, and what's wrong with that analysis? Well, the bankruptcy court found substantial benefit. The BAP found that there was a substantial benefit. Neither one acknowledged that it was a $2.6 million substantial benefit, but 503B requires a substantial benefit, and they both found a substantial benefit. That wasn't specifically my question, though. The issue of consolidation, which is what resulted in what you're describing here as the $2.6 million, resulted from the consolidation? Yes. And I guess I had the impression, from what I've read here, that the bankruptcy court and the BAP took the view that the consolidation was really basically an effort to, a platform for your firm to request more fees, and was not specifically a benefit otherwise. Well, had the substantive consolidation not been reversed by my firm's work, the case would have been, the corporate case would have become administratively insolvent. My firm would not have been paid, nor would the other Chapter 11 case administrative claimants or any of the general unsecured creditors. But you weren't representing any of them. You were just representing yourself. Correct. And had my firm had no stake, it wouldn't have had standing, and the cellular 101 is a controlling Ninth Circuit case that says having a stake doesn't preclude a ward of 503B fees. And, in fact, they were awarded just the wrong amount. Well, that's what I'm struggling with, is if this move about consolidation was for the purpose of getting more fees, then it seems to me that that is a reason not to rely on the $2.6 million if it was not also, or separately, or independently beneficial to the bankruptcy process. I'm not making my question very clear, I guess, but... Let me do what I can with it. My firm was at about $37,000 of fees. The rest of that $2.6 million went to other claimants in the corporation case. So the benefit to my firm was tiny. The benefit of almost the whole $2.6 million was available for other claimants, and cellular 101 is the controlling Ninth Circuit case, and it says having a stake does not preclude having the fee. I don't think you'd even have standing if you had no stake. I don't think that's what I'm asking, though. But I understand... Well, can you try again? Because I guess I'm having trouble understanding Your Honor's question. Well, my question isn't whether you're entitled to fees at all. My question is whether the bankruptcy court can be skeptical of the amount that's being sought because the primary benefit was to your firm to get fees, that the whole process was for that purpose. Now, it doesn't preclude fees. You've got close to $30,000 in fees, and that's not my question. It's just simply how much more credit, if you will, was the court required to give when it viewed the process as being for your firm's benefit rather than for the bankruptcy's? No, I think I understand. The standard under 503B is substantial benefit to the bankruptcy estate. The benefit to the corporation bankruptcy estate was the $2.6 million was kept from the bankruptcy estate. There's no question, I gather, about the amount that the estate benefited from. The question is what's the connection between that amount that was saved for other people and your claim for yourself in the proceedings? I mean, do you take into account the amount that just so happened, great, but just so happened to benefit the others when that's not what you were there for? You were there to get your fees. By keeping the trustee from taking my firm's fee, it kept everybody else's fees, everybody else's claim from being made administratively insolvent and not paid. In 503B and Cellular 101, you put them together, the standard is benefit to the estate, not how much individually my firm was getting. The benefit to the estate was $2.6 million and under 503B, the law firm is entitled to the fee for that benefit. The number one thing is the amount of the benefit, the result. I'm trying to find here what the bankruptcy court did, and it seems like the bankruptcy court determined that the fees were warranted under 503B1A. You agree with that, right? Yes, I do. Because BLF conferred a substantial benefit on the corporate creditors, but it seems like the bankruptcy court seemed to have noted that the bankruptcy law firm opposed the consolidation motion solely based on its own interest in recouping the unpaid $36,476 in attorney's fees it was owed from the corporate estate. It seems like, according to the bankruptcy court, your motive was evident because BLF expressly invited the trustee in the original opposition to resolve BLF's objection by simply paying the unpaid portion of its allowed Chapter 7 administrative claim. But it seems like, nonetheless, your opposition to the substantive motion still helped to preserve the corporate estate and, therefore, conferred a benefit on the corporate creditors, so the court determined you were entitled to fees. The court didn't recognize it was a $2.6 million benefit, that that was uncontroverted. There was no declaration at all to the trustee's opposition. He was the only one, by the way, that objected to the law firm's fees. There was no declaration at all. So the law firm's evidence was uncontroverted because there was no declaration to the trustee's objection. And so you have a person trying to take the $2.6 million in breach of his fiduciary duty to the corporate estate and creditors, trying to take the $2.6 million, and then is objecting to the law firm's fees. Now, I would like to briefly touch on the other seven errors of law. I have about two minutes, and if you use it all, you'll use it all. Well, okay, error of law 2, awarding zero of the $17,466 that the law firm spent doing the 503B application, and zero for defending against the trustee's objection. That was $30,000, so that's $47,466 together. The controlling case is wind and wave, and that is that you get the fees for applying for the fees and for defending the fees. The Sunbelt case says the same, and I put in a FRAP 28, Rule 28 letter for Blixus Yellowstone Mountain Club, Blixus, which is decided in the Ninth Circuit case. Does Baker-Botts support that also? Baker-Botts and the Supreme Court, does that? The Asarco case, that's the Baker-Botts case, Your Honor, that case was not about a fee-shifting statute. 503B is a fee-shifting statute. Asarco was about attorneys employed by the bankruptcy estate, so it wasn't a fee-shifting case, and therefore, it does not overrule wind and wave, which is important because Blixus cites with approval Sunbelt, which we cited, which says that in a fee-shifting case, that time spent establishing entitlement to an amount of fee is compensable. So that's the law. That's the fee-shifting case. Asarco was not a fee-shifting case. The next era of law, cutting my fees to the 2006 rate for work done in 2014. After that, the era of law, cutting my firms, my $800 rate to $400 when the trustees counsel, who had a lot fewer qualifications than I have, were already in 2011, charging $540 an hour and $525, respectively, violating the circuit's Stetsons v. Griffin and Stanger v. Electric and Motor case, that you must apply a risk multiplier, must apply a risk multiplier to the load star. When the attorneys take the case with the expectation they'll receive a risk enhancement, their hourly rate does not reflect the risk, and there's evidence the case was risky. The $400 rate from 2006 was hourly, clearly didn't reflect any risk. If you take that fee... Yes, Your Honor. And none of them are considered waived, even if you haven't discussed them, so... Yes, Your Honor. Thank you. Thank you, and good morning, Your Honors. I'm Howard Kamhai of Urban Cone and Jessup, and I represent the Appellee Al Siegel Chapter 7 trustee. I'm trying to avoid the desire to make this overly simplistic, which is, in the bankruptcy setting especially, of course the judge has the overriding need to apply a reasonableness standard to any fee request. The appellant has cited 503 and kind of glosses over the distinction between the separate parts of 503. Make no mistake, the record is clear that this is an application brought under 503B1, not under 503B4, which refers to 503B3. The reason why that is important, and again, under this umbrella of remaining reasonableness fees, 503B4, if any subsection, is the fee shifting portion of 503B. It specifically refers to certain conduct that is awardable under 503B3, which deals with petitioning creditors in an involuntary case. It deals with substantial contribution, but only in a Chapter 9 or Chapter 11, not in this Chapter 7 case. So the 503B4 fee shift provision, if that is going to be interpreted as such, does not apply to the 503B1 application filed by the appellant. That's one. That's why cases such as Wind and Wave, cases such as Stetson, which I will take a moment to address because it came out in the appellant's reply. Stetson was a class action. It's undisputed that in class actions there is clearly a fee shifting provision that applied to the case. Judge Manny Real of the Central District of California significantly cut the fees of the requesting party. But Judge Real did not provide the benefit of any justification or reason in that case why the fees were cut. The case was sent back saying we need justification why these fees were cut. Contrast that case to this case where Judge Blubahn took 20 pages of memorandum of findings that said, for example, K. March, the primary attorney for the appellant, is not worth $800 an hour. That wasn't just something that was pulled out of the air. Judge Blubahn specifically put in Judge March's propensity to make frivolous arguments. And we believe that the argument... What about the main argument that's being made, at least today, that the $2.4 million recovery, or what was a successful argument by the bankruptcy law firm, is not worth $800 should be the primary consideration for the bankruptcy court? There's two responses to that, Your Honor. One is that that argument, as the BAP recognizes, brought up for the first time on appeal in Samson v. W. Capital case, says that that's not to be considered. Notwithstanding that, should the court consider that approach... By what? I'm sorry? You said should, shouldn't, they say it should not be considered. Yes. I'm asking you why? Because the record reflects that that argument about the common fund theory was brought up for the first time on appeal, and the BAP record... To the BAP. On appeal to the BAP, yes. Right, right. That was not preserved in the bankruptcy court. I'm unaware of any portion of the record where that was established, Your Honor. But also importantly, to say that $2.6 million was added to the estate is a little bit of a mischaracterization of the record. The cases are ongoing. What Appellant was able to do was to prevent substantive consolidation, keeping the two estates separate. That doesn't mean that there may not be some type of a compromise or consolidation in the future. So Judge Blubond recognized that when she wrote that an unintended benefit was conveyed upon the estate. The real benefit here, which was clear by Appellant's own comments and appreciated by the BAP and Judge Blubond, is I'm appealing this, and I'm opposing this because I have outstanding fees of $30,000, and I need to get paid. That's Appellant's own language. So to address the question that Your Honor raised with respect to Baker and Botts, Baker and Botts is a 330 case, which applies to professionals that are employed by the estate. This is a 503B1 application. Wind and Wave does have language saying that the standards for 503B and for 330, the section at issue in Baker and Botts, were not only introduced at the same time, they were intended to be substantially similar, etc., etc. So Baker and Botts does apply, not directly, but inferentially. Your Honor, what we believe that Baker and Botts applies is remembering that this is not a 503B4 type of a fee shift. This is an application saying I did something good for an estate, and I should get paid under 503B1. So Baker and Botts is not necessarily read to have overruled a 503B4 fee shift. But the intent of Baker and Botts, saying the American rule would be turned on its head if we allowed litigants like this to be compensated for protecting their fees, which is indisputably what happened here, that rationale does apply. Except as I understand it, that even under Baker and Botts, they would be entitled to their fees for preparing the fee application as distinct from the litigation portion. Is that correct? Baker and Botts does allow that because... And that was not done here. So there was an error here. Your Honor, if there was an error, first of all, there was a specific statutory basis that Baker and Botts allowed that, which is Section 330A6. In the event that the court believes that compensation should have been allowed for preparing the 503B application, Judge Blubahn already anticipated that question and has listed what she has found to be the at the $400 an hour for a $4,000 fee. That could be found at footnote 11 of Judge Blubahn's memorandum. So to say... I had a question also about the hourly rate. Yes. It did... All of these numbers are very big since when I was in law practice. But it did seem to me that it was an unusually... In the context of this case and the lawyers that were involved, it seemed to me that the hourly rate... What is your... A couple of responses, Your Honor. The hourly rate, first of all, specifically as the BAP found, was not just a rollback to the fees of 2006. Judge Blubahn specifically evaluated the performance of a lawyer in her bankruptcy community and said, this is a lawyer who argues inappropriately at the podium, that advances at times frivolous arguments, like in this case, the reading argument that uses briefs that shouts and is unclear and shouts at the reader. So there are specific reasons why Judge Blubahn arrived at $400 an hour. And to say that, well, we look at somebody who has no question an esteemed educational background, who was a member of the bench before she was not asked to return and say, how could that only be worth $400 an hour? And I would remind this panel that Judge Blubahn's findings in that respect are not to be disturbed, even if this panel would have come up with a different number. And that's what the Gutierrez case says. Was that so whimsical and capricious that when Judge Blubahn explained all of the reasons why Ms. March's personal efforts were not worth anything but $400 an hour, was that a number pulled out of the process of a thoughtful evaluation that bankruptcy courts always have to do? And it's our position that whether or not it's an agreeable number, that that is not such an arbitrary and capricious number that it needs to be overruled. Did you put on, I don't think you did, any evidence of the prevailing hourly rates in the community? Your Honor, we cited in our briefs, I'm not sure whether or not the judge used her own familiarity, but we did in our opposition cite practitioners from the community and their hourly rates. And in fact, if the court could look to the transcript of our hearing, which is the appellee's excerpts of records starting at page 1 through 67, Judge Blubahn specifically addresses Ms. March and says, listen, you are no X practitioner. You are no Y practitioner. Those are the types of people who came from a bankruptcy background, who had a mentor that allowed them to understand what bankruptcy arguments were about. You don't have any of those. So Judge Blubahn obviously understood the distinction between somebody who was obviously an educated and intelligent woman versus somebody who has the bankruptcy savvy to be a wise bankruptcy lawyer. And Judge Blubahn, in her discretion, evaluated and said, that's worth $400 an hour. Judge Blubahn knows the community. She's tasked with finding out and understanding what the reasonable values are. She sat on this case and still sits on this case eight years later at the time, so she has personal experience with the efforts expended by the bankruptcy law firm. Again, Your Honors, we are, well, before I get to the again, let me just address the reading argument, the fundamental fairness, because that was in the papers. It's our position that reading, which awarded a post-petition administrative expense claim to certain tort claimants, does not apply. Reading needs an intentional and willfully wrongful conduct on the part of the trustee. Here, the wrongful conduct alleged is bringing two motions to move a case forward, one a consolidation case, one a compromise, both of which were approved by the bankruptcy court, one of which was affirmed on appeal. The cases cited by the bankruptcy law firm deal with things like intentional withholding of taxes, intentional zone violations, things that are intentional conduct by the trustee. As Judge Blubahn correctly noted, that if I was going to award fees for every trustee motion that I approve that gets overturned on appeal, first of all, that would turn the bankruptcy system on its head, excuse me, the American rule on its head, by awarding fees in that perspective. And second of all, it would make functioning as a trustee untenable. So we argue that reading has no application here. And in fact, if this court evaluates reading and the argument put forth by appellant, it may be determined that those are the types of quasi-frivolous arguments that create the reduction in fees in the first instance. So I will conclude with the concept for this court that, especially in the bankruptcy system, there is always, always a necessity for a bankruptcy judge to superimpose a reasonableness component to a fee request. Here, a 503B1 request was made. It's not a fee-shifting statute. Judge Blubahn found that even though that may not ultimately be the case at the end of the Waxburg cases, that appellant conferred a benefit to the estates by getting the consolidation overturned. It's her obligation, knowing the community, knowing the practitioners and their value, for the judge to superimpose that. This was not a whimsical situation like in the specific findings that attorney time was spent on secretarial projects, such as compiling exhibits and downloading documents at $800 an hour, and the judge, in her discretion, found that this is the value of the work by appellant. Whether or not this court would agree and reach the same conclusion, her findings are not an abuse of discretion and must be Any other questions, Your Honor? I don't believe so. I thank you for your time. Ms. March, even though you used all your time, you may have one minute for rebuttal. Thank you very much, Your Honor. Law firms' work was good enough to win, to keep the $2.6 million of corporate estate money from being misspent, taken by the trustee and misspent, to pay $2.6 million of things that the corporation case did not owe. That is an extremely good result. That entitled law firm to all the fees requested, and that is the most important factor here, and there was no explanation as to why that didn't entitle law firm to the fee. There was no declaration to the trustees' objection, so there was no evidence. There was $896 of work that could be classified as secretarial. That's in the reply, so you can take that off, but actually, and all of 503B is a fee-shifting statute, not just the tiny piece that the trustee was referring to. The controlling case law that entitles the law firm to the fees for applying to the fees and the fees for defending against the trustees' objection is Wind and Wave, Blixus, and Sunbelt, and ASARCO was not a fee-shifting case, and it does not preclude the fee here. It does not overrule Wind and Wave. Thank you, Counsel. Thank you, Honest. The case just argued is submitted. We appreciate both counsel's arguments, and we are adjourned for this session.
judges: Sack, Graber, Murguia